**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

CASE NO. 23-13239

_____

CASSANDRA M. PRUITT,

*Plaintiff/Appellant*,

v.

UNIVERSAL PROTECTION SERVICES,
LLC d/b/a ALLIED UNIVERSAL SECURITY
SERVICES and KRISTEN ARGUS,

*Defendants/Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE J.P. BOULEE
(1:20-cv-1884)

_____

**APPELLANT'S REPLY BRIEF**

_____

Lisa C. Lambert
Law Office of Lisa C. Lambert
245 N. Highland Avenue
Suite 230-139
Atlanta, Georgia 30307
404-556-8759
lisa@civil-rights.attorney

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellant/Plaintiff Cassandra Pruitt, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files her Certificate of Interested Persons and Corporate Disclosure Statement:

1. Kristen Argus (Defendant)

2. Honorable Christopher C. Bly (District Court Magistrate Judge)

3. Honorable J.P. Boulee (District Court Judge)

4. David C. Hamilton (Attorney for Defendants)

5. Lisa C. Lambert (Attorney for Plaintiff)

6. Law Office of Lisa C. Lambert (Attorney for Plaintiff)

7. Martenson, Hasbrouck & Simon LLP (Attorney for Defendants)

8. Cassandra Pruitt (Plaintiff)

9. Bianca A. Svensson (Attorney for Defendants)

10. Universal Protection Services, LLC, d/b/a Allied Universal Security Services (Defendant)

There are no publicly traded corporations involved in this case.

i

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT…………………………………….…i

TABLE OF CONTENTS……………………………………………………………...ii

TABLE OF CITATIONS………………………………………………...……….…iii

ARGUMENT……………………………………………………..……………….…1

I.    ALLIED AND ARGUS PAID MS. PRUITT LESS MONEY THAN
      MALES WHO HAD THE SAME OR COMPARABLE POSITION …....…..1

      A.  Both Defendants are liable under the Equal Pay Act ………………..….1
            1.  Defendants fail to take the facts and inferences in Pruitt's favor and
                 the disputed facts shows why a jury trial is necessary ………...…..1
            2.  Pruitt only compares herself to predecessors not supervisors ……..3
            3.  There is nothing arbitrary about using contractually required hours
                 of supervision as a "common denominator" for wage rates ....…....4
            4.  The Act requires an equal rate of pay for equal work ……....…..8
            5.  Defendants' footnote argument is irrelevant……………....…..10
            6.  Argus qualifies as an employer under broad definition in the
                 EPA……………………………………………………………11
            7.  Defendants failed to argue, or plead, any statutory affirmative
                 defenses………………………………………………....…...12

      B.  Defendant Allied is liable under Title VII ………………………….…12

II.   ALLIED RETALIATED AGAINST MS. PRUITT FOR REPORTING
      DISCRIMINATORY WAGES IN VIOLATION OF TITLE VII.................14

CONCLUSION………………………………………………………………...20

CERTIFICATE OF COMPLIANCE……………………………………………...21

CERTIFICATE OF SERVICE……………………………………………………21

## <u>TABLE OF CITATIONS</u>

**<u>U.S. Supreme Court cases:</u>**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)…………..……………….……..…1

*Burlington N & S.F.R. Co. v. White*, 548 U.S. 53 (2006)……………………..…20

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)..…………….…..….………7

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)……………....12, 17

*Tolan v. Cotton*, 572 U.S. 650 (2014)……………...............................................1

**<u>Federal Circuit Court cases:</u>**

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004)………...…12

*Anthony v. Georgia*, 69 F.4th 796 (11th Cir. 2023)……...................................……13

*Bence v. Detroit Health Corp.*, 712 F.2d 1024 (6th Cir. 1983)……………...….9, 10

*Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791 (11th Cir. 2000)…..……..19

*Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639 (11th Cir. 2018)……........…15

*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir.1997)……………...…….18

*Miranda v. B & B Cash Grocery Store, Inc.*,
   975 F.2d 1518 (11th Cir. 1992)……………………………...….…………..12

*Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989 (11th Cir. 2010)………10

*Mulhall v. Advance Sec.*, 19 F.3d 586 (11th Cir. 1994)…………………………3, 6

*N. Shore Med. Ctr., Inc. v. CIGNA Health*, 68 F.4th 1241 (11th Cir. 2023)……….7

*Vinson v. Tedders*, 844 F. App'x 211 (11th Cir. 2021)…………….……………..13

*Welch v. Mercer Univ.*, 304 F. App'x 834 (11th Cir. 2008)……………...……13

*Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003)…………………18

**Federal District Court cases:**

*Ball v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-00012-SDG,
      2021 U.S. Dist. LEXIS 180093 (N.D. Ga. Sep. 20, 2021)…......................16

*Morgan v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-01717-RGK-AGR,
      2019 U.S. Dist. LEXIS 221602 (C.D. Cal. Nov. 8, 2019)……………..…...10

*Schoebel v. Am. Integrity Ins. Co.*, No. 8:14-cv-426-T-27AEP,
      2015 U.S. Dist. LEXIS 89868 (M.D. Fla. July 10, 2015)……………….…17

*Strickland v. Synovus Bank*, No. 2:19-cv-1195-AMM,
      2021 U.S. Dist. LEXIS 203539 (N.D. Ala. Sep. 7, 2021)……………..…8, 9

**Statutes:**

29 U.S.C. § 206………………………...……………………………...…..8

**Regulations:**

29 C.F.R. § 1620.14...…………………………...…………….…………...……3

**Other:**

Black's Law Dictionary 104 (6th ed. 1990)………………………………...…5

EEOC Compliance Manual, § 10-IV.C……………..…………………………...9

## ARGUMENT

## I. ALLIED AND ARGUS PAID MS. PRUITT LESS MONEY THAN MALES WHO HAD THE SAME OR COMPARABLE POSITION

### A. Both Defendants are liable under the Equal Pay Act

#### 1. Defendants fail to take the facts and inferences in Pruitt's favor and the disputed facts shows why a jury trial is necessary.

It is beyond doubt that in reviewing a motion for summary judgment, all facts and inferences therefrom must be taken in favor of the non-movant—here, Ms. Pruitt. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) ("in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'") (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Defendants acknowledge the proper standard for review, Answer Brief at page 13; however, they argue, as they did in the trial court, disputed facts as undisputed and inferences therefrom in their own favor. But Defendants cannot prevail at summary judgment on disputed material facts that only a jury can determine.

For example, as to Pruitt's predecessors, Defendants claim that Westgate had emergency management functions as Security Director. But this is a disputed fact. Pruitt worked alongside him and observed that he did not have responsibility for any emergency management functions—Moore retained those responsibilities.

Defendants claim that Moore was responsible for more than one hospital. But

this was not true until his final year as Security Director; so this is disputed as well.

As for Dunning, Defendants claim he was responsible for four hospitals and did emergency management functions. Both claims are disputed. When Moore replaced Dunning, he was only responsible for one hospital: AMC-Main. And there is no objective evidence that connects Dunning's stunning pay raises to additional facilities. In fact the opposite is true. The email regarding his raise from $57,500 to $90,000 in 2007 says it is "big increase from our client" Doc. 135-19 at 2. When the steep increase was questioned, the district manager just says it was from the "best client I have ever added." *Id*. There is zero mention of additional responsibilities. Plus his title was simply "Security Manager/Site Supervisor" and there is zero mention of any emergency management responsibilities. *Id*. at 1. Defendant fails to address these facts, let alone the fact that there were no emergency management policies until Moore became Security Director.

Plus, it is disputed as to whether Pruitt had any emergency management functions once she was promoted to Security Director. Defendants claim she didn't—but she did.

It is apparent that the emergency management aspect of the Security Director job is where Defendants attempt to make a wedge between Pruitt's duties and that of her predecessors. But Defendants overreach. First the claimed hours devoted solely to emergency management are completely disputed as to Westgate and

2

Dunning and highly suspect as to Moore, who claimed over half his time was on emergency management issues. No jury would be required to believe that the majority of the time for a Security Director would be devoted to such undertakings. Plus, there is no mention of "emergency management" services in the contract between AMC and Allied during Westgate's tenure. *See* Doc. 135-3; Doc. 135-16.

Defendants fail to address the fact that when Ms. Pruitt became the Director at AMC-Main, she was required to do two full time jobs: Security Director *and* Security Manager. Certainly the amount of responsibility for two full time managerial jobs is commensurate to her predecessors. *Mulhall v. Advance Sec.*, 19 F.3d 586, 592 (11th Cir. 1994) ("The plaintiff need not prove that her job and those of the comparators are identical; the test is one of substantiality, not entirety."); *see also*, 29 C.F.R. § 1620.14(a) (noting that "[w]hat constitutes equal skill, equal effort, or equal responsibility cannot be precisely defined" but during any analysis "the broad remedial purpose of the law must be taken into consideration").

Defendants' arguments based on disputed facts cannot win the day. A jury presented with these disputed facts and inferences may find in Defendants' favor but a reasonable jury could also find in favor of Ms. Pruitt. And only a jury can determine these disputed facts.

### 2. *Pruitt only compares herself to predecessors not supervisors.*

As to Pruitt's predecessor comparators, Allied argues that she cannot use these

comparators because she was their subordinate. Answer Brief at 32-33, 35, 36, 37. Again, Allied never made this argument in the trial court—the R&R made this argument—which Defendants acknowledged in their response to Pruitt's Objections to the R&R. *See* Doc. 143 at 3 (stating "the R&R did not err in finding that the position held by these individuals was a supervisory position over Plaintiff's position and thus not an appropriate comparator for purposes of the EPA). Defendants now double down on an argument it never raised in the first place arguing that Pruitt "would have reported" to each of her predecessors. But this is not true. Pruitt became the Security Director at AMC-Main. All of Pruitt's predecessors held the same position: Security Director. Contrary to Defendants' claim—it is *not* undisputed that this position was eliminated. Pruitt took over the job. She is not comparing her herself directly to her supervisor, but her predecessors; when she became Security Director she had the same level of responsibility of her predecessors. Defendants' argument is nonsensical.

### 3. There is nothing arbitrary about using contractually required hours of supervision as a "common denominator" for wage rates.

Defendants argue that Ms. Pruitt's analysis of her disparate wages—based on the actual required hours of supervision in Allied's contract with AMC—is "wholly arbitrary and bears no relation to how Pruitt's pay was determined." Answer Brief at 27. First, it is not arbitrary but based on actual contractually required hours of supervision. Second, Defendants fail to show the contractually required hours "bears

4

no relation" to how Pruitt's salary was determined; in fact, they have never explained how her salary was determined.

"Arbitrary" is defined as: "In an unreasonable manner, as fixed or done capriciously or at pleasure." Black's Law Dictionary 104 (6th ed. 1990). What is unreasonable about using the actual number of hours of supervision in determining the "common denominator" for wages? Indeed, Defendants fail to respond to the fact that when Pruitt and Jacobs were both Security Managers, before becoming Directors, they were paid *almost the same* amount *per hour of supervision*. This can hardly be a coincidence. Defendants also fail to address the fact that the disparity between their rates of pay started with the stipend, Jacobs' pay raises (which Pruitt did not receive) and grew even higher when Stevens replaced Jacobs.

Defendants also fail to address the fact that the number of hours billed on its own contracts determine the size of a particular job. Doc. 127-3 at 53 (52:10-17). But based on this fact—coupled with the historical tracking of salaries to hours of supervision—it is not arbitrary, but a reasonable inference that the salaries for directors are based on the number of contractually required hours of supervision.

Instead of addressing the prior similarities between Pruitt and Jacobs's salaries or the fact that contracts determine the size of a job, Defendants repeat the suppositions of the R&R, that the number of hospital beds or number of staff supervised could be a "potential denominator." Answer at 28. But the size of the

5

facility is subsumed into the number of required security hours supervised. Defendants argue that Pruitt had more shift supervisors than AMC-South; this makes sense because she was responsible for supervising over 400 more hours. The number of shift supervisors corresponds to the number of hours contractually required. And Defendants' argument that Pruitt could delegate some—not all—of her duties to shift supervisors means nothing. Both Jacobs and Stevens could do the same. Defendants simply quibble with the factual basis that Pruitt relied on with "what ifs" and no explanation of why the hours of supervision—the job she was hired to do— is not rationally related to her salary.

Despite claiming that Pruitt's analysis of the contractual supervision numbers "bears no relation" to how Pruitt's salary was determined Defendants wholesale fail to explain how her salary was set. If they do not state how it was set, how can they possibly argue that Pruitt's analysis bears no relation to the setting of her salary? Nowhere in their Answer Brief do they answer this question. In fact, nowhere in their briefs below did they answer this question. The only evidence in the record that even touches on how salaries are set is Argus's statement to Pruitt when she complained about being paid less than men, that Pruitt will only make "what [she is] offered and what [she is] willing to work for." Doc. 135-9 at 11:13-20. But this appears to be a "market force justification for disparate wages [that the Supreme Court] long [ago] rejected as a legitimate affirmative defense." *Mulhall v. Advance*

*Sec.*, 19 F.3d 586, 596 n.22 (11th Cir. 1994), citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 205 (1974). No doubt that is why Defendants fail to address Argus's comment to Pruitt. But now it has no excuse and simply argues in a vacuum that Pruitt's factual basis is "arbitrary." It is not arbitrary when the alternative is nothing.

Without Defendants' contentions for how it actually determined Pruitt's salary, a jury could agree with Pruitt that her calculations are rational and based on the actual contract. After all, the number of hours of supervision are undisputed. It is a reasonable inference that she was paid for the services that Defendant was under contract to provide. As this Court noted last year:

> To survive summary judgment, a plaintiff needn't present evidence that compels a single, airtight inference—just evidence that allows a reasonable one. Now, of course, it should go without saying that a reasonable inference isn't necessarily a correct one. But the way to rebut an inference allegedly skewed by limited data is to add data. And [Defendants] can do just that—at trial. But unless and until that happens, it remains the case that a reasonable jury *could* conclude that [Pruitt's common denominator of hours of supervision is correct].

*N. Shore Med. Ctr., Inc. v. CIGNA Health*, 68 F.4th 1241, 1245 (11th Cir. 2023) (cleaned up, emphasis in original). As it stands now, Defendants can argue their "total compensation" argument to the jury and Pruitt can make her argument that her salary was not commensurate to her male peers because she was not paid the same per hour of supervision. At that point, the Defendants can rest on their argument. But certainly the jury will wonder why they do not rebut Pruitt's calculations. And while a reasonable jury may believe Defendants' simplistic argument, they may not. They

7

may believe the Defendants' silence in how the wages were determined is a cover up for discrimination. But this decision can only be made by a jury hearing the competing version of the facts. Right now, the only thing "arbitrary" about the differential wages is how Defendants set these wages.

Defendants' simplistic "total compensation" argument fails to hold weight in light of the fact that Pruitt has pointed out a reasonable method of computing salaries, that is historically accurate and based on the actual contractual service numbers, or common denominator.

### 4. The Act requires an equal rate of pay for equal work.

The EPA prohibits employers from paying workers "at a *rate* less than the rate at which he pays wages to employees of the opposite sex." 29 U.S.C. § 206(d)(1) (emphasis added). Defendants make a basic total compensation argument; however, Pruitt has shown that Defendants paid her at a lower *rate* than her male contemporaries.

Defendants claim that the plaintiff in *Strickland* made the same argument they are making, that the annual salary is the appropriate measure. Answer Brief at 29. Not exactly. In *Strickland*, the employer there made the same argument as Defendants: that only total compensation should be reviewed. *Strickland v. Synovus Bank*, No. 2:19-cv-1195-AMM, 2021 U.S. Dist. LEXIS 203539, at *30 (N.D. Ala. Sep. 7, 2021). The plaintiff disputed this, noting that she was paid two separate rates:

one for her "time-based wage rate" and performance based wages and the former *rate* was lower than that of her male comparators. *Id*. at \*31-32. The court agreed with the plaintiff and rejected the employer's total compensation argument and found she made a *prima facie* case under the EPA. *Id*. at \*33. The same should happen here—Defendants' total compensation argument should be rejected and Pruitt's showing of differential rates of pay demonstrate a *prima facie* case.

Defendants fail to address the EEOC's guidance on this point—that unequal total compensation based on *different* rates establishes a "prima facie violation" of the Act. EEOC Compliance Manual, § 10-IV.C., available at: https://www.eeoc.gov/laws/guidance/section-10-compensation-discrimination.

Defendants' argument that *Bence* is inapplicable likewise fails. Answer Brief at 30. Defendants claim that Bence stands for the proposition that "the proper measure of comparison under the EPA is [Pruitt's] salary divided by" one year. *Id*. But that is just a total compensation argument and is not what *Bence* stands for. *Bence* holds that in order to compare whether a plaintiff was subjected to discriminatory pay, the courts should undertake a "practical inquiry" to determine the "common denominator" of the pay in order to measure it. *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027 (6th Cir. 1983). Bence does state that this common denominator is "*typically* a given time period," but it also states it could be "quantity of quality of output." *Id*. These are simply examples and not limitations. In the end,

9

Bence states the courts must perform a "practical inquiry which looks to the nature of the services for which an employer in fact compensates an employee." *Id*. And here, when the nature of the services is examined, the Security Director provides contractually required of hours of supervision. The contract requires more hours at AMC-Main than at AMC-South. But when these hours are measured against the salaries, Pruitt's male counterparts were paid a higher rate that her. This violates the Act.

Defendants fail to address *Morgan*, which collects cases for the proposition that the "common denominator" or the basis for the pay is the critical factor. *Morgan v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-01717-RGK-AGR, 2019 U.S. Dist. LEXIS 221602, at *9 (C.D. Cal. Nov. 8, 2019).

### 8. *Defendants' footnote argument is irrelevant.*

Defendants attempt to bolster their basic total compensation argument in a footnote, alleging security managers at hospitals not under the AMC contract earned less than Ms. Pruitt. But arguments in footnotes are not preserved. *See, e.g., Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (holding a party who makes an argument "in passing in a footnote only and does not elaborate on it in any further detail" waived the argument). Plus, none of these individuals are relevant to the analysis as to whether Pruitt received equal pay while working for AMC because they concern different locations and different contracts. And

Defendants provided zero evidence regarding the security services provided, job descriptions, statements of actual duties, or even their chain of command. There is no relevance to the alleged salaries of these individuals even if the argument had been properly preserved.

### 9. *Argus qualifies as an employer under broad definition in the EPA.*

As to Argus' potential liability under the EPA, Defendant simply argues that her self-serving testimony shows she had no authority over Pruitt's salary. But a jury would not be compelled to believe her. After all, Argus played an integral part in setting Stevens' salary—a fact she fails to address. Plus, there is the absurdity in arguing that a General Manager, one rung below the Regional Vice President, had no power or authority to address gender pay disparity. In fact, she brought Pruitt's complaints of gender discrimination to the Regional Vice President's attention. Plus, Argus' predecessor, Brian MacKay, was integral in the "stipend" that Pruitt received after she was ordered to take over Westgate's duties at AMC-Main. He initially told her that she would not get "one red cent more" for these additional duties but paid the stipend after Pruitt pushed back. If MacKay had authority to determine Pruitt's salary, certainly Argus did as well. Finally, Defendant argues that Argus had "no responsibility for promoting Pruitt or providing her with alternative positions with Allied." Answer Brief at 39. This is false as because once Pruitt was put under Flowers' chain of command, new opportunities appeared. If Flowers had the ability

to recommend Pruitt for better opportunities so did Argus.

> ### 10. *Defendants failed to argue, or plead, any statutory affirmative defenses.*

Defendants claim that they pled the fourth catch-all defense to Plaintiff's EPA claims, that their acts were based on factors other than sex. Plaintiff disputes that this defense as pled meets the standard required under the statute. But it does not matter for purposes of this appeal because Defendants never argued that they made Pruitt suffer disparate pay for a reason other than her sex in the court below and thus waived the same. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

## B. <u>Defendant Allied is liable under Title VII</u>

Establishing a *prima facie* case is not an onerous task. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Even so, all of Allied's arguments attack Pruitt's *prima facie* case because it has no non-discriminatory explanation as to how it sets salaries.

Allied's argument that Pruitt's predecessors are not proper comparators lack merit as her burden under Title VII is more relaxed than that of the EPA. *See Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529, n.15 (11th Cir. 1992) (noting "Title VII incorporates a more relaxed standard of similarity between male and female-occupied jobs, thus plaintiff is not required to meet the exacting standard of substantial equality of positions set forth in the Equal Pay Act"). Pruitt

has already shown that if the facts and inferences therefrom are taken in her favor, all of her predecessors were paid more for doing *similar* jobs. Even if this Court does not believe a predecessor is meets the standard under the EPA, they should be appropriate comparators under Title VII.

None of this Court's decisions cited by Allied support its argument that Pruitt's predecessors are not proper comparators. *See* Answer Brief at 43-44. Pruitt is not attempting to compare herself to someone with a different title or rank. *See Anthony v. Georgia*, 69 F.4th 796, 805-06 (11th Cir. 2023). Allied has never claimed the disparate pay was based on prior experience and Pruitt is not comparing herself to someone with a different job title. *See Vinson v. Tedders*, 844 F. App'x 211, 213-14 (11th Cir. 2021). Allied has never argued that Pruitt was not qualified for the Security Director position and Pruitt has not argued for comparators who worked in wholly different departments. *See Welch v. Mercer Univ.*, 304 F. App'x 834, 837 (11th Cir. 2008). Pruitt is comparing herself as a Security Director to men who previously held the same job: Security Director. Her predecessors are proper comparators.

Allied repeats its argument that Pruitt cannot compare herself to supervisors. Answer Brief at 43. Again, this is false; Pruitt compares herself to her predecessors. *See* Section A.2, *supra*.

Of course, Allied has no argument that Pruitt's contemporaries are not proper

13

comparators as it calls them her "true comparators."

Allied's response to Jacobs' larger salary increase than Pruitt, as well as Stevens' high starting salary, is to call these issues "trivial." This is not a substantive response but a demeaning characterization. Certainly providing a higher percentage pay raise to a man than Pruitt is relevant as to whether Pruitt was denied the same benefit because she's a woman. And arbitrarily providing another man a starting salary that was $9,000 higher than the person he replaced is relevant as to disparate treatment as well. These facts support her gender discrimination claim.

Allied fails to address the fact that following the "stipend" Jacobs received two more raises while Pruitt received none.

Finally, Allied argues that it is not required to "offer an explanation for its actions" until Pruitt makes her *prima facie* case. Yes, this is order of the burden shifting analysis. Pruitt has made her *prima facie* case, which is not an onerous task. However, Allied puts forth zero explanation for how it determined the salaries of Pruitt's predecessors or contemporaries (let alone plead any of the statutory defenses). As such, the burden does not shift back to Pruitt to show pretext.

## II. ALLIED RETALIATED AGAINST MS. PRUITT FOR REPORTING DISCRIMINATORY WAGES IN VIOLATION OF TITLE VII

Allied wholly misconstrues or misunderstands how retaliation complaints work. It is impossible for Pruitt to suffer an adverse act related to her EEOC Charge until *after* she files the Charge. If she was disciplined before she filed the Charge, it

would have nothing to do with her participatory protected conduct. After all, her protected conduct would not have occurred yet. But when she is disciplined for an act that she did *before* filing her Charge, *after* filing her Charge, that adverse act is suspect. Why? Because if she was not disciplined for the act when it happened— why is she being disciplined for it after she complained about discrimination to the federal government?

Allied's reliance on *Buchanan* is misplaced because there, the plaintiff was already suspended and under investigation for rule violations *before* she complained about discrimination. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018). This court found that due to the pending investigation, close temporal proximity standing alone could not satisfy the causal connection. *See id*. That is not the case here—Pruitt was not under any investigation when she filed her EEOC Charge.

Allied's reliance on *Henderson* is likewise misplaced. There, the plaintiff first filed an internal grievance about his supervisor on March 21, 2005; he was subsequently interviewed by human resources on September 14, 2005 regarding another employee's complaint and during the interview, he relayed additional complaints about his supervisor. *Henderson v. Fedex Express*, 442 F. App'x 502, 504 (11th Cir. 2011). Fedex fired the plaintiff only two weeks after the interview because they believed he falsified his timecard on September 22, 2005; in other

words, *after* the interview. *See id*. This court found that the timecard issue was an intervening act that broke any causal connection. *See id*. at 507. But here, Pruitt did nothing between the time of filing her EEOC Charge and the removal. The claimed misconduct occurred two months prior to her removal—it cannot be an intervening act.

Allied argues that Pruitt "offers only conjecture and speculation" that her removal was the result of digging up dirt on her. Answer Brief at 48 This is not true—she offers inferences from the evidence, which in her favor, show that her removal was pretext for retaliation. She suffered no discipline for voice recording the patient at the time she did it—a recording she made at the direction of AMC employee Dirk Watkins, who reported to Downs. But then only five days after Allied's HR department and Argus were notified of the EEOC Charge, this recording is suddenly an issue. The timing for the discipline makes no sense—except as an act that is incredibly close to her protected activity. In other words, retaliation.

Allied argues that the key here is not when Pruitt recorded the patient but when Downs learned of the recording. Downs is not an intervening act—Downs is the excuse for the adverse act. Allied cites to *Ball* to support its contention; however, there, the trial court conflated the burden shifting paradigm—like the trial court here—and used the alleged non-retaliatory excuse to defeat the causal connection. *Ball v. Bd. of Regents of the Univ. Sys. of Ga.*, Civil Action No. 1:20-cv-00012-SDG,

16

2021 U.S. Dist. LEXIS 180093, at *8 (N.D. Ga. Sep. 20, 2021) (stating that "the *McDonnell Douglas* burden shifting framework does not mandate that each burden be considered in isolation" and if a plaintiff can use evidence supporting prima facie case to show pretext, then "[t]he facts supporting a non-discriminatory reason for termination can also be considered in determining causation."). This is error. Once the *prima facie* case is made, then the alleged non-discriminatory reason is provided and after that, the plaintiff is provided the opportunity to show pretext.

*Schoebel*, also cited by Allied, suffers from the same infirmities as *Ball* and the trial court's decision here. There, the court considered the alleged excuse for the adverse act as intervening with causation instead of adhering to the burden shifting paradigm. *Schoebel v. Am. Integrity Ins. Co.*, No. 8:14-cv-426-T-27AEP, 2015 U.S. Dist. LEXIS 89868, at *5-8 and n.2 (M.D. Fla. July 10, 2015). Again, this upends the order and manner of the burden-shifting paradigm that the courts have utilized for decades to help "determine whether the litigants have created an issue of fact to be decided by the jury." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981). "[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Id*. And conflating the prima facie case with the alleged non-discriminatory excuse "deprive[s] the plaintiff of the opportunity to show that the nondiscriminatory reason was in

17

actuality a pretext designed to mask discrimination." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574-75 (6th Cir. 2003).

Further, contrary to Allied's claims, Pruitt has shown "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence"—that Allied fails to even address. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997). Allied fails to address the fact that the recording only became an issue two months after it happened and on the same day that Pruitt took medical leave. Allied fails to address Argus' evasive testimony regarding the events surrounding the removal. Allied fails to address the fact that Downs only made his decision after talking to Argus. Allied fails to address the fact that Downs never divulged who told him about the recording. Allied fails to address the fact that the policy that Pruitt allegedly violated only prohibited photography and *video* recording of patients without informed consent. Finally, Allied fails to explain why Pruitt was even subjected to discipline and removal when she only voice-recorded the patient at Watkins' direction. Instead, it argues that Pruitt is just "quarreling" with Downs' decision. But, following directives and being punished for the same is not questioning whether the decision is wise, but whether it is non-retaliatory.

Allied's argument that Pruitt has no evidence that her removal was retaliatory

is false, as shown above. Plus, Allied misrepresents her testimony. She was asked what evidence she had *other than* the suspicious timing of her of her removal; after objection by her counsel, she said her removal itself was evidence. Of course, Ms. Pruitt is not an attorney, but the question subsumes the fact that she testified about the highly suspicious timing. And "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). And, Allied ignores that Pruitt pointed to other evidence which shows the questionable nature of her removal: the phone call and emails between Argus and Downs; emails about how valuable she was at AMC prior to her removal; the fact that Watkins ordered her to record the patient; the only people who were aware of the voice recording—at the time it was made—were her, Watkins, and his employee, "Eddi;" no investigation regarding the recording ever happened; and she was immediately replaced by Stevens. *See* Doc. 125-1 at 55, 56, 58, 61 (206:5-207:8, 208:10-25, 210:11-212:4, 219:7-16, 230:1-7).

Allied also argues that Pruitt being subjected to almost two years of wage stagnation after filing her initial Charge is not an adverse act. But Pruitt does not complain solely of wage stagnation, i.e., no salary increases, but opportunities for higher paying jobs. And both are adverse acts because either would dissuade "a

reasonable worker from making or supporting a charge of discrimination." *Burlington N & S.F.R. Co. v. White*, 548 U.S. 53, 64, 68 (2006). Allied fails to acknowledge or address the fact that only after Pruitt no longer reported to Argus, she was afforded opportunities for advancement.

Allied argues that it could have "used Downs' request for removal *as an excuse* to terminate [Pruitt's] employment." Answer Brief at 54 (emphasis added). Well, if Allied were going to use that as an *excuse*, then it would have been pretext for retaliation. The fact remains that it did not fire Pruitt because there was no reason to terminate her employment. And finally, the fact that Pruitt remains employed and now earns a salary commensurate with her skills and responsibilities is a tribute to her perseverance, good work, and the fact that she is no longer under Argus' chain of command. But her current salary and continued employment do not absolve Allied from its retaliatory acts.

## <u>CONCLUSION</u>

For the reasons in Pruitt's Initial Brief and herein, the District Court's Order should be reversed and this matter remanded for a jury trial on the merits.

Respectfully submitted,

    /s/ Lisa C. Lambert
Lisa C. Lambert
Georgia Bar No. 142135
Law Office of Lisa C. Lambert
245 N. Highland Avenue

Suite 230-139
Atlanta, Georgia 30307
404.556.8759
lisa@civil-rights.attorney

Attorney for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it contains 4,949 words in the Brief.

 /s/ Lisa C. Lambert
Lisa C. Lambert

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via CMF to the attorneys identified below this 17th day of May 2024:

David C. Hamilton
Bianca A. Svensson
Martenson, Hasbrouck & Simon LLP
2573 Apple Valley Road
Atlanta, Ga 30319

 /s/ Lisa C. Lambert
Lisa C. Lambert